## Illinois Steel Company v. Thomas Szutenbach.

1. VERDICTS—*Not Set Aside for Mere Irregularity.*—A mere informality or mistake of an officer in drawing a jury, or mere irregularity or misconduct of the jurors themselves, is not sufficient ground for setting aside a verdict where the party complaining could not have sustained injury thereby, or where the irregularity is one of which the party was aware, and failed to object to, or could, had he attempted, have prevented.

2. JURIES—*Must be Composed of Persons Designated According to Law.*—A verdict not rendered by the persons designated and selected according to law, but by others who, by means of fraudulent practices, obtained seats in the jury box, heard the evidence and returned a verdict, having no right or authority to do so, and a judgment entered in pursuance of such verdict, should be set aside upon the motion of the injured party, if he be innocent of the iniquity.

3. VERDICTS—*Rendered by Illegal Jury—Effect of.*—Where the facts in controversy have not been determined in accordance with the law, or by such a jury as the parties have a right to be heard by, the verdict and judgment can not stand, and the court will not inquire whether they are, as between the parties, just or not.

**Motion,** to set aside judgment. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1896. Reversed and remanded with directions. Opinion filed December 14, 1896.

### STATEMENT OF THE CASE.

In 1892, Thomas Szutenbach instituted suit against the Illinois Steel Company for personal injuries. This case was tried before Judge Chetlain and a jury in December, 1895, resulting in a large verdict against the defendant. From the judgment upon this verdict the Steel Company prosecuted an appeal, which was heard in this court at the March term, 1896. While the case was thus before the court, and after it had been taken under advisement, it came to the knowledge of defendant's attorneys that one of the persons who sat upon the jury in the case, under the name of William Tracy, participating in the deliberations of the jury and signing the name of William Tracy to the verdict, was

not William Tracy at all, but was known by the name of Charles Cornell. William Tracy was, during 1895, a foreman employed in the county building, residing in that part of the city of Chicago known as the North Division. In personal appearance he is tall and dark; Cornell, on the other hand, is not over middle height, his hair is not dark, and his figure is rather stout, and his place of residence is in the West Division of Chicago. Tracy had received a summons to appear before Judge Chetlain to serve upon the jury during the month of December; this summons had been given by him to one Conroy, who was a mechanical engineer in the county building, and Tracy's superior; by Conroy the summons was given to Charles Cornell, and was the only summons which Cornell received.

As soon as the facts became known to the defendant's attorneys, a motion was, on the 9th of June, 1895, submitted to the trial court, asking that the verdict and judgment should be set aside, this motion being by that court taken under advisement.

Subsequently, defendant's attorneys discovered that the name of Cornell was itself an alias. Early in September defendant's attorneys learned the history of the man. His real name is Michael Farrell. He came from Philadelphia, and had served three terms in prison, the last term being one of three years in Cherry Hill penitentiary, for highway robbery. These facts were shown to the trial court on the 16th of September, by the records of Farrell's commitments in Philadelphia, certified under the seal of the Criminal Court of Philadelphia; also by the affidavit of Michael Farrell himself.

. As soon as the defendant filed its first motion in the trial court, Judge Chetlain issued a warrant for the arrest of Charles Cornell upon the charge of contempt of court. The hearing upon this charge was held before Judge Chetlain early in June, and on the 10th of that month Cornell was sentenced to four months in the county jail. His affidavit made in September, was signed by him during his confinement upon this sentence.

On the 28th of September the trial court denied the defendant's motion, and from this order the present appeal is prosecuted.

There is in the record here now presented, the affidavit of one of the jurors to the effect that Farrell, during the deliberations of the jury, voted for a heavy assessment of damages. As nearly as the juror can remember, Farrell's vote was in favor of a verdict of about $20,000.

E. PARMALEE PRENTICE, attorney for appellant.

The jury guaranteed by the constitution is a jury of twelve lawful men. Thompson on Trials, Sec. 3; Bibel·v. The People, 67 Ill. 172.

A person whose name is not on the panel of jurors, who falsely personates one whose name is on the panel, and while so personating serves upon the jury, is not a juror, and the verdict rendered by such a person and eleven jurors is the verdict of eleven men only. Dayton v. Church, 7 Abb. N. C. 367; People v. Ransom, 7 Wend. 416; Norman v. Beaumont, Willis, 484; King v. Tremain, 7 Dowl. & Ryl. 684; Dovey v. Hobson, 6 Taunt. 460; Stripling v. The State, 3 S. E. Rep. 277.

KAVANAGH & O'DONNELL, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

We can not regard a judgment which is regular upon its face and would afford ample protection to a sheriff or other officer acting thereunder, as a nullity, whatever fraud may have been practiced in the obtaining of the same, or whatever falsehood the record may actually speak as to the methods pursued in obtaining, or the persons by whom the verdict and judgment were rendered. A void thing, or that which is a nullity, is no thing, and will afford protection to no one acting thereunder. The question with which we have to deal is, not what the force and effect of this judgment was as it once stood, fair and unimpeached upon the

record, but how it is to be regarded, now that it has been made clear that there entered into the rendering of the same, fraudulent and criminal practices of the most flagrant nature.

The constitution of this State guarantees to each person the right of trial by jury, and this, with the exceptions named in that instrument, means a trial by a jury of twelve men.    Thompson on Trials, Sec. 3; Bibel v. The People, 67 Ill. 172.

A mere informality or mistake of an officer in drawing a jury, or a mere irregularity or misconduct in the jurors themselves, is not sufficient ground for setting aside a verdict, either in a criminal or civil case, where the court is satisfied that the party complaining could not have sustained any injury from it, or where the irregularity is one of which the party was aware, and failed to object to, or could, had he attempted, have prevented.

Only such person as has been and is duly qualified to sit as judge, can so act and sit in a judicial trial; even though the parties to the litigation stipulate, and have entered of record, their agreement that another person may so act.    If the record show that a person not a judge has, by agreement of all the parties to a cause, tried the same and claimed to enter judgment therein, which has been placed upon the records of the court, yet it appearing upon the face of the proceedings, the judgment record or roll, that the trial and so-called judgment were by a person not a judge, the proceeding is a nullity, and the so-called judgment a vain and void thing.    Hoagland v. Creed, 81 Ill. 506.

A jury is selected in accordance with methods pointed out by law, the parties litigant aiding in such selection, and having various rights as to the making up of the panel.

As in the case of the person by whom, as judge, the trial was had and the judgment entered, so in the case of the jury, to whom the questions of fact appear, by the record, to have been submitted; if the record show upon its face that the cause was not submitted to, tried by, and a verdict rendered by the persons designated and selected as before men-

tioned, but by others, who by means of fraudulent and criminal practices obtained seats in the jury box, heard the evidence and rendered a verdict, having no right or authority to do so, the judgment, to say the least, is a thing which a court having power over the same, will not, as against the protest of a party innocent of the iniquity, allow to stand. Dayton v. Church, 7 Abb. N. C. 367; People v. Ransom, 7 Wend. 416; Norman v. Beaumont, Willis, 484; King v. Tremain, 7 Dowl. & Ryl. 684; Dovey v. Hobson, 6 Taunt. 460; Stripling v. The State, 3 S. E. Rep. 277; Windett v. Hamilton, 52 Ill. 180; Steele v. People, 40 Ill. 59; Black on Judgments, Sec. 310; People v. Gary, 105 Ill. 264.

A party has not only a right to a trial by jury, he has a right to a trial by, and a verdict from the jury selected to try the cause; the men by whom, sitting as jurors, he has every reason to, and does, believe, are actually passing upon his case.

Whether the verdict or judgment under consideration is, as between the parties, just or not, is a question which we are not now called upon to determine. It is sufficient to say that neither verdict nor judgment was rendered under such circumstances as the law contemplates; that the parties have not, in the view of the law, had their day in court; that the facts in controversy have not been determined in accordance with the law, or by such a jury as the parties have a right to be heard by.

If a verdict or a judgment is to be permitted to stand when one person has, by fraudulent and criminal means, succeeded in placing himself upon the jury, and participated in the verdict rendered, upon principle and logic a verdict and judgment where the entire panel was composed of persons there obtaining place by such methods, might be sustained. What the influence of the criminal who did sit and act with the jury was, we can not tell. The other eleven, or *the* eleven jurors (for Farrell was not a juror) were apparently bound to hear and consider what he had to say; he took part in their deliberations and exerted his influence in bringing about a verdict which, but for his participation therein, could not have been rendered.

It is some satisfaction to know what the character of the man guilty of this criminal conduct was; that he had before been three times in prison; once in the penitentiary for highway robbery; but, had he been the most irreproachable man in the community, the effect of his misconduct in the present case would have been the same.

A verdict has not been rendered in this case by a jury of twelve men. Unknown to the parties, and without their consent, eleven jurors, alone, sat at the trial and joined in the verdict. By the fraudulent conduct of Michael Farrell, the parties were deprived, upon that occasion, of their right to a trial by jury. Such right, the constitution of this State guarantees to them, and in accordance with such right, and for the purpose of maintaining the same, the order of the Superior Court refusing to set aside the judgment and award a new trial in this cause, is reversed, and the cause remanded, with directions to the court to set aside its judgment and give the parties a new trial.

MR. JUSTICE GARY.

I do not wish to add to what Judge Waterman has written as to the effect of personating a juror, where there is nothing to put the party on his guard against it. Had it been made a question, while the jurors were being selected, whether one of them was the person he professed to be, I take it the result could not be overhauled except by direct proceedings reviewing some decision of the court upon exception duly taken. But as this case presents the matter, the question is, whether the objection could have been reached by writ of error *coram nobis* at common law, for which writ the statute has substituted a motion. Sec. 67 (bb), Ch. 110, Practice.

If it could not have been so reached, the court had no authority to grant the motion, as, in general, a court can not vacate a judgment after the term. That writ would lie whenever some fact not shown by the record, nor in issue, that is, not the subject of inquiry during the suit, which if known to the court, would have prevented the judgment, was made to appear by the error assigned upon that writ.

If the record shows the fact, or, in our practice, if the papers in the cause show the fact, then the error in disregarding the fact is not error in fact, but in law, and can be corrected by the same court only during the term. Graham's Practice, 942; 1 Tomlin's Law Dict., 652; 2 Tidd's Practice, 1136; 6 Am. & Eng. Ency. of Law, 810.

Though the personating a juror is not found among the instances where such writ has been the remedy, it seems to stand upon the same footing as an extrinsic fact, not shown by the record nor in issue, and therefore may be, under the statute, reached by motion.