(No. 25310.—

THE PEOPLE *ex rel.* Clara L. Denny, Petitioner, *vs.* JOHN E.
TRAEGER, SR., *et al.* Respondents.

*Opinion filed August 8, 1939.*

WALTER F. DODD, MARTHA E. CARDWELL, GRACE H. HARTE, and JEAN SMITH EVANS, for petitioner.

THOMAS J. COURTNEY, State's Attorney, (JACOB SHAMBERG, of counsel,) for respondents.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an original petition for a writ of *mandamus*, filed on leave of this court by the People upon the relation of Clara L. Denny, a resident, taxpayer and elector of Cook county, against the jury commissioners thereof, to test the constitutionality of an act of the General Assembly amending section 2 of the Jury Commissioners' act, (Ill. Rev. Stat. 1937, chap. 78, par. 25,) making women eligible for jury duty. This amended act applies only to counties having jury commissioners and did not become effective until July 1, 1939. A like amendment of section 1 of an act entitled "An act concerning jurors" in effect July 1, 1939, requires that county boards of counties not having jury commissioners include women in jury lists. Respondents admit that in the revision and amendment of the jury list for use on and after July 1, 1939, they are omitting therefrom women electors, who possess the necessary legal qualifications for jury duty, and base their refusal upon the alleged invalidity of the amended statute. They contend that section 5 of article 2 of the constitution prohibits the General Assembly from making women eligible for jury service and, further, that the amended act violates the constitutional right of trial by jury. It is not urged that the enactment in question would deny any citizen the right to have his case tried by a jury, where he was entitled to such previous to the amendment.

To answer the question presented, it is necessary to determine what are the essential elements of a trial by jury within the meaning of the constitutional provision. The ordinance of 1787 provided by section 14 of article 2 that

the inhabitants of the Northwest Territory should always be entitled to the benefits of trial by jury and that "no man shall be deprived of his liberty or property, but by the judgment of his peers, or the law of the land." The constitution of 1818, section 6 of article 8, provided "that the right of the trial by jury shall remain inviolate." In the constitution of 1848, section 6 of article 13 was: "The right of trial by jury shall remain inviolate," etc., and the constitution of 1870 guaranteed it in the following language: "The right of trial by jury as heretofore enjoyed, shall remain inviolate; but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law." This court has held that each successive constitution guaranteed the same right. (*George* v. *People*, 167 Ill. 447; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609.) None of the constitutions defined the essential elements of the right of a trial by jury. The words "as heretofore enjoyed," as used in the constitution of 1870, have been held to refer to a right of a trial by jury under the common law of England and under the constitutions of 1818 and 1848. *People* v. *Kelly,* 347 Ill. 221; *People* v. *Bruner,* 343 id. 146.

None of the charters of liberty in which the right of trial by jury has been guaranteed contains any reference to the qualifications of jurors. Through the centuries the qualitative tests making persons eligible for jury service have not remained the same. In the earliest periods, jurors found their verdicts upon their own knowledge of the facts and they were selected from the villa or place where the offense was committed or the dispute arose. (Forsyth, History of Trial by Jury.) Later, by 24 Geo. IIc, 18, it was required that jurors be drawn from the body of the county. The early common law required that jurors be freeholders and, during certain periods of time, were required to meet certain standards of personal property ownership and tax payments. Until within recent times woman was not

thought to be on a parity with man and it was considered that she did not possess those qualitative attributes that made her capable of exercising the right of suffrage or of rendering jury service. She was excluded from jury service on the false theory of economic, sociological and legalistic inferiority and not by any positive statement found in any of the constitutional provisions guaranteeing the right of trial by jury.

The right of trial by jury has been jealously guarded by the courts and there are many decisions in this and other States and in the Federal courts defining the essential elements of a jury trial as guaranteed by constitutional provisions. In *Sinopoli* v. *Chicago Railways Co. supra,* this court said: "The essential thing in the right of trial by jury is the right to have the facts in controversy determined under the direction and superintendence of a judge by twelve impartial jurors having the qualifications and selected in the manner required by law, whose verdict must be unanimous and shall be conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence and to grant a new trial." In *People* v. *Kelly, supra,* we said that the essential elements of a trial by jury were (1) twelve (2) impartial (3) qualified jurors who should (4) unanimously decide the facts in controversy (5) under the direction and superintendence of a judge. See *Liska* v. *Chicago Railways Co.* 318 Ill. 570; *Lommen* v. *Minneapolis, etc., Co.* 65 Minn. 196, 68 N. W. 53; *State* v. *Norton,* 64 N. D. 675, 255 N. W. 787.

It is settled that no one set of qualifications of jurors was engrafted upon the law by any of the constitutional guarantees. Juror qualifications are a matter of legislative control and may differ from those qualifications known to the common law, as is demonstrated in the following cases. In *In re Mana,* 178 Cal. 213, 172 Pac. 986, it was held that a constitutional provision, substantially to the effect that the right of a trial by jury shall be secured to all and remain

inviolate, does not prevent the legislature from authorizing women jurors. The court said: "Qualifications of the jury is a matter subject to legislative control, and, even though such qualifications may differ from those at common law, such legislation is nevertheless a valid exercise of legislative power." In *People* v. *Barltz,* 212 Mich. 580, 180 N. W. 423, where the court considered the service of women as jurors it was said: "It seems to be the settled law in all the States, so far as we have been able upon examination to discover, that the qualifications of jurors are matters of legislative control, even though the qualifications laid down by the legislature differ from those at the common law. * * * So long as the essential requisites of trial by jury are preserved, it is competent for the legislature to prescribe the necessary qualifications of jurors and additional qualifications may from time to time be imposed by the legislature." In *United States* v. *Wood,* 299 U. S. 123, as applied to the sixth amendment of the Federal constitution the court said: "The sixth amendment does not preclude legislation making women qualified to serve as jurors in criminal prosecutions although that was not permitted at common law."

In Illinois, the General Assembly has the right to prescribe the qualifications of jurors. (*Kerwin* v. *People,* 96 Ill. 206.) *People* v. *Barnett,* 319 Ill. 403, decided that the nineteenth amendment to the Federal constitution had no effect whatever on the liability or eligibility of women for jury service in this State. Discussing the *Barnett case* in *People* v. *Holmes,* 341 Ill. 23, we said, "The legislators could have included in the jury list all electors and nobody else, or only some classes of electors to be determined in such manner as the legislature might elect, or certain classes of electors and certain classes of other persons. * * * On the other hand, the right of the General Assembly to restrict, abridge, deny or enlarge the right and duty of jury service cannot be denied." This statement, of course,

is subject to the recognized qualification that any classification cannot impair the essentials of a trial by jury as guaranteed by the constitution, nor be arbitrary nor deny the equal protection of the laws.

In other jurisdictions where the right of legislatures to empower women to sit on juries has been questioned, the decisions generally sustain such power. *State* v. *James,* 96 N. J. L. 132, 114 Atl. 553; *State* v. *Walker,* 192 Iowa, 823, 185 N. W. 619; *State* v. *Rosenberg,* 192 N. W. (Minn.) 194; *Commonwealth* v. *Maxwell,* 271 Pa. 378, 114 Atl. 825; *Parus* v. *District Court,* 42 Nev. 229, 174 Pac. 706; *State* v. *Chase,* 106 Ore. 263, 211 Pac. 920; *Tynan* v. *United States,* 297 Fed. 177; *Palmer* v. *State,* 197 Ind. 625, 150 N. E. 917; *State* v. *Norton, supra; In re Mana, supra; People* v. *Barltz, supra.*

We recognize that the constitutional guaranty is that the right of trial by jury "shall remain inviolate." "Inviolate" is defined by accepted lexicographers to mean unhurt, uninjured, unpolluted, unbroken. We cannot conceive how the presence of a woman, or women on juries, who possess the necessary legal qualifications, would abridge, restrict or impair any of the essential elements of a trial by jury as guaranteed by the constitution.

Respondents contend that the use of the word "men" in that part of the constitutional provision which reads "* * * but the trial of civil cases before justices of the peace, by a jury of less than twelve men may be authorized by law," indicates the framers of the constitution intended that the guarantee of right of trial by jury meant the jury should be composed of men only. Article 2 is the bill of rights of the 1870 constitution and section 1 reads: "All men are by nature free and independent, and have certain inherent and inalienable rights, among these are life, liberty and the pursuit of happiness. To secure these rights and the protection of property governments are instituted among men, deriving their just powers from the consent of the

governed." The sections which follow section 1 list those "certain inalienable rights" that are not specifically mentioned in section 1. It would be absurd and lead to ridiculous conclusions if the words "men," "persons," "all persons," "accused," "his," "the people," "every person," "he," "all men," that appear in such sections, were not held to have been used in a generic sense. To hold otherwise would act to remove from many of the governed the protection guaranteed by the bill of rights. Section 5 is an integral part thereof, and guarantees to all the governed the right to a trial by jury, as such jury was known at the common law. When section 1 of article 2 was debated before the convention, a proposal to substitute the word "persons" for "men" was defeated because "all men" included all persons. That is very persuasive that "men" used in section 5 was used in a generic sense.

The constitution of North Dakota contains substantially the same phraseology as section 5 of article 2 of our own. In construing the use of the word "men" as used therein, the Supreme Court of that State said, in *State* v. *Norton, supra*: "What the convention had in mind, and what the people had in mind was a jury of twelve electors and the convenience and economy of a lesser number of jurors in the courts of justice of the peace and other courts not of record. We interpret the word "men" in the thought of the convention and of the people of the day as meaning those persons who possessed the qualifications of jurors at that time, with no thought of sex." With constitutional provisions similar to ours with respect to the use of the word "men," the courts of Iowa, Michigan and New Jersey have also sustained legislation of the character now before us. (*State* v. *Walker, supra; People* v. *Barltz, supra; State* v. *James, supra.*) In Ohio, it was held that the jury statute used the word "men" in a generic sense and it included women when they qualified as electors. *Browning* v. *State*, 120 Ohio St. 62, 165 N. E. 566.

By this amendment the General Assembly has determined that women electors who possess the necessary legal qualifications are qualified along with men to render jury service and, since such legislation does not impair, abridge or deny the right of trial by jury as guaranteed by section 5 of article 2 of the constitution, the same must be sustained. The courts are not concerned with the necessity or wisdom of such legislation.

The prayer of the petition for the issuance of a writ of *mandamus* is granted and the respondents, as jury commissioners of Cook county, are directed, in the revision and amendment of the jury lists, to include therein the names of all electors of each sex between the ages of twenty-one and sixty-five years, possessing the necessary legal qualifications for jury duty. *Writ awarded.*