THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FLOYD HUDSON, Defendant-Appellant.

(No. 71-12;

Third District—September 7, 1972.

James Geis, of Defender Project, of Ottawa, for appellant.

Edward Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by defendant Floyd Hudson from a judgment of the Circuit Court of Kankakee County following a jury verdict of guilty on a charge of Armed Robbery. Hudson was sentenced to a term of imprisonment of not less than 3 nor more than 7 years.

From the record it appears that 3 men, one of whom was armed with a pistol, robbed Royal Jewelers of Kankakee, Illinois, on February 20, 1970. The owner of the store and an employee were forced to lay face down on the floor and had their hands tied behind their backs while the 3 men took money and items of jewelry from the store. On the following day both the owner and his employee were shown several hundred photographs by investigating police officers which included one photograph of the defendant. They were unable to identify the photograph of defendant at that time. On February 25, 1970, the owner selected a photograph of defendant as one of the men involved in the robbery. At this time the owner and his employee were shown some 20 photographs, but the only color photograph was that of the defendant. A second photograph of defendant was identified as being that of one of the robbers by the owner of the store a few weeks later. In this photo-

graph defendant was pictured in front and profile views in what is characteristically described as a "mug shot". The "mug shot" photograph was admitted into evidence with a legend on the sign around the neck of the defendant blanked out by order of the court. Defendant attempted to explain the circumstance in which this picture was taken, but was not allowed to explain it in his testimony.

Following the arrest of defendant he appeared at a preliminary hearing on April 24, 1970, at which time he was not represented by counsel, nor was a transcript of the proceedings made. At that hearing, the owner, viewing defendant for the first time since selecting his photographs, identified him as one of his assailants. Thereafter, defendant and two others were indicted for armed robbery. The cases of the other two men were severed from that of defendant. Defendant also petitioned for production of the transcript of the trial of one of the men as a basis for impeaching the testimony of the State's witnesses in his own case. He also requested a free transcript of earlier proceedings in his case which had resulted in a mistrial, also presumably for the possible use in impeaching the State's witnesses. It appears from the record that defendant is indigent.

During the course of the trial, a fingerprint technician from the Illinois Bureau of Identification testified concerning identification of latent fingerprints found on a watch case at the jewelry store. This technician made repeated references to fingerprint cards of defendant which had been obtained from the Illinois Bureau of Identification, but later admitted on cross-examination that the identification of the latent fingerprints could have been made by comparing them to defendant's fingerprints taken at the time he was arrested.

██ Many cases in this court, as well as in the United States Supreme Court and Illinois Supreme Court (*Stovall v. Denno*, 388 U.S. 293, 302; *People v. Blumenshine*, 42 Ill.2d 508), have emphasized that the procedures employed by police authorities in seeking the identity of the perpetrator of a crime through an eye-witness should not be unduly suggestive or conducive to irreparable mistaken identification.

██ In the case before us the initial identification of defendant as one of the robbers was made by the jewelry store owner in selecting a color photograph of defendant from among approximately 19 other photographs, all of which were in black and white. While the State contends that this initial identification was "obviously tentative" and that the significant photographic identification by the witness was made at such time as he identified defendant's "mug shot" at a later date, we must observe the placing of a color photograph among others, all black and white, may be quite suggestive and at least somewhat conducive to

mistaken identification. Obviously the police could easily have arranged to have a black and white print made of defendant's color photo prior to exhibition of the photographs to the witness. Nevertheless, we are unable to agree with defendant that the initial photographic identification and the witness identification of defendant there, in and of itself would amount to reversible error. It appears that the color photograph of defendant was the same size as the others displayed to the witness at the time and there is no evidence that the other photographs portrayed persons of obviously different race or color from that of the person portrayed in the color photograph. There was no evidence likewise of any further suggestions made to the witness at the time of identification of the color photograph. Thus, while we have indicated we do not look with favor upon the identification procedure employed in this case, we cannot say it amounted to a process so unduly suggestive and conducive to irreparable mistaken identification, standing alone, as to automatically require a reversal of the conviction. When coupled with other errors appearing in the record, however, as we indicate hereafter, we feel that defendant's conviction must be reversed and the cause remanded for a new trial.

■■ Error is asserted by defendant because the police failed to provide counsel for him at his preliminary hearing. In *Coleman v. Alabama,* 399 U.S. 1, which was decided on June 22, 1970, the United States Supreme Court found that preliminary hearings conducted in connection with criminal proceedings constitued a "critical stage" in the criminal process and required the presence of counsel on behalf of the accused. In *People v. Adams,* 46 Ill.2d 200, the Illinois Supreme Court observed that the function of a preliminary hearing in Illinois is much the same as that in Alabama and thus held that counsel was also required at that stage in our State. The Supreme Court in the *Adams* case, however, specifically determined that *Coleman v. Alabama, supra,* was not to be retroactively applied in Illinois. The *Adams* case was affirmed by the United States Supreme Court. (*Adams v. Illinois* (1972), 31 L.Ed. 202, 92 S.Ct. 916.) In view of the fact that the preliminary hearing in question here occurred on April 24, 1970, approximately two months prior to the date of the *Coleman* case, the determination in that case would be inapplicable to the case at bar even though defendant's actual trial commenced subsequent to the *Coleman* decision *People v. Hawkins,* 4 Ill.App.3d 471, 281 N.E.2d 72, 75-76.

■■ Defendant contends that the introduction of the "mug shot" over his objection and the subsequent failure of the trial court to allow evidence of the circumstances under which it was taken, served to improperly call the attention of the jury to defendant's previous prob-

lems with the police and thus substantially prejudiced his case. It is fundamental that proof of prior arrest, unrelated to the charge in question, could not be used against an accused (*People v. Bennett*, 413 Ill. 601), and that the evidentiary use of "mug shots" has been deplored on that basis in Illinois courts. (*People v. Hawkins, supra; People v. Williams*, 72 Ill.App.2d 96.) While none of the decisions referred to support a rule that the introduction of such photographs automatically should result in a reversal of conviction, it is clear that the trial court must exercise much care in avoiding the manifestly prejudicial effect of such evidence. In the instant case, the "mug shot" introduced depicted defendant from three views and one exhibited defendant in front of a height chart. The sign hung around defendant's neck was taped over by order of the court, but we conclude that it was clear that the jury nonetheless was unnecessarily alerted to possible prior criminal conduct on part of the defendant. Its use in the instant case, coupled with the trial court's failure to admonish the jury concerning its use, and the further failure of the court to allow defendant to explain the circumstances of the taking of such photograph far outweighed the probative value of the photographs in connection with the identification process, and amounts, in our judgment, to error.

██ Similarly, it is contended that the court erred in receiving testimony from the State's expert witness, the fingerprint technician from the Illinois Bureau of Identification, that the latent prints lifted from the watch case in the jewelry store after the robbery matched those of the defendant which had been obtained by the witness "from the office files for the Bureau". While the trial court precluded further use of the Bureau's fingerprints of defendant and restricted the State to comparison of latent prints found at the jewelry store with those taken from defendant after his arrest, the witness did mention the Bureau prints several times thereafter and his entire testimony manifested a clear implication to the jury that the prints of the defendant had indeed been on file with the Bureau of Identification. The jury was thus allowed to infer prior criminality on the part of the defendant. In view of the fact that there was obviously no need for this evidence, as the expert witness admitted on cross-examination, since he said that he could have made a positive identification of the latent prints lifted from the watch case solely by comparing them with the prints of defendant taken subsequently to his arrest, the testimony of such witness also constitutes clear error, in our judgment.

██ Defendant asserts additional error in the failure of the court to allow his motion for a free transcript of earlier testimony in his own case which resulted in a mistrial and for a free transcript of the witnesses'

testimony during the co-defendants prior trial arising out of the same robbery. Defendant's motions were made almost on the eve of the trial, and although he would ordinarily be entitled to these materials upon a timely request (*People v . Miller*, 35 Ill.2d 615), we would not say that the trial court erred in refusing his motions on the ground that they were untimely and filed for the purpose of delay. Since the cause must be retried, the timeliness question is not now of concern and the trial court should now allow defendant's motions for the transcripts upon remandment of this case.

Defendant also raises questions as to the severity of the sentence imposed but since the cause must be retried we express no views with respect thereto at this time. In summary, while we are of the opinion that none of the errors in the record, appearing singly, would necessarily require reversal, the record as a whole leads us to the conclusion that justice will best be subserved by retrial of the case in a manner consistent with the views expressed in this opinion. Accordingly, the judgment of the Circuit Court of Kankakee County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

STOUDER, P. J., and DIXON, J., concur.